ROBERT S. BREWER, Jr.
United States Attorney
OWEN ROTH
Assistant United States Attorney
New York Bar No. 4833166
Office of the United States Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9464
owen.roth@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FRANCIA E. TABARES-SALINAS <br><br> Defendant. | Case No. 20-CR-437 WQH KSC <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE** <br><br> The Honorable William Q. Hayes <br> The Honorable Karen S. Crawford |

The United States Of America, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Owen Roth, Assistant United States Attorney, opposes Defendant Francia Elena Tabares-Salinas's Motion to Amend Conditions of Release (Dkt. No. 11.) Tabares offers no proper basis for modification; this Court should deny the motion.

**A. Background**

The Government has charged Tabares with attempted re-entry in violation of 8 U.S.C. § 1326. Tabares applied for admission to the United States at the Otay Mesa Port of Entry on December 9, 2019. She was driving a Chrysler 300 sedan and presented the passport of another person to the inspecting CBP Officer. When CBP confirmed that Tabares was not the person identified in the passport and confirmed her prior removals and lack of permission to enter the United States, they placed her under arrest.

On December 10, this Court held Tabares's initial appearance; at that hearing, the Court granted the Government's motion for detention. In its order of detention, the Court specifically found (i) that the offense was a serious one, (ii) that probable cause existed and that the evidence against Tabares is strong, (iii) that Tabares is not a long-time resident of the community, (iv) that Tabares does not have steady employment in the United States, (v) that Tabares does not have substantial financial resources or assets in the United States, (vi) that Tabares has a significant prior criminal record, and (vii) that at the time of the offense, Tabares was on supervised release. *See* Dkt. No. 7.

As the Court learned at the time of the hearing, Tabares has a 1994 conviction for conspiracy to distribute cocaine, for which she received 168 months in custody and five years of supervised release, and a 2009 conviction for conspiracy to distribute cocaine, for which she received sixty months in custody and ten years of supervised release. As the Court observed at the hearing, she was on supervision when she committed the instant offense. She has two prior deportations, the most recent in December 2011.

On March 17, 2020, the Chief Judge of the Court issued General Order 18, which continued all trials and trial-related proceedings in this Court until April 16 to combat the spread of the COVID-19 corona virus. The next day, Tabares filed this motion to reconsider the detention hearing. Her motion should be denied.

**B. Discussion**

Tabares seeks to re-litigate her detention hearing in light of the ongoing public-health emergency that prompted the recent general order, almost entirely in light of the speculative prospect of a COVID-19 outbreak at the facility where she is detained pending trial. This speculation is both unsubstantiated and unwarranted: there are no known cases of COVID-19 at the facility and no evidence that the facility's staff is unprepared to address such cases if they should arise. Accordingly, the Court should deny the motion.

As a threshold matter, Tabares improperly devotes a portion of her argument to re-urging purported equities that existed at the time of her first detention hearing. Tabares's own brief acknowledges that re-litigating a bail determination is appropriate "if the judicial

officer finds that information exists that was not known to the movant at the time of the hearing." 18 U.S.C. § 3142(f). Here, Tabares suggests she has family ties in Los Angeles, the ability to make bond, and a reason to disregard her trafficking convictions.[1] That information was available to Tabares at the initial hearing, and is an improper basis to re-litigate bail now. In any event, the purported equities do nothing to overcome the findings that this Court has already made. This Court has previously balanced Tabares's purported equities against the factors warranting detention, which included her two prior federal drug-trafficking convictions, the fact that she committed the instant offense while on supervised release, her lack of employment in the United States, and her lack of long-term ties to the community. In truth, the only matter not known to Tabares at the time of her initial hearing is the present public-health issue presented by COVID-19. That circumstance is not a basis to grant bail in this case.

Tabares has not shown any basis to alter the Court's prior bail determination. Title 18, United States Code, Section 3142(g) sets forth the factors courts shall consider when determining whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." These factors include, among others, (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" the defendant, and (3) the "history and characteristics" of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

---

[1] Tabares observes that the attorney who represented her in 2009 was disbarred, and contends that he was therefore ineffective. The order of the First Department in New York recites a litany of instances of improper conduct by the attorney, but nowhere finds that he provided ineffective assistance of counsel to a client. *See In re Kulscar*, 123 A.D.3d 251 (1st Dep't 2014). Tabares makes unsworn representations about the purported inadequate assistance she received from the attorney; these statements are offered in violation of Local Rule 47.1(g), and should be ignored.

criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g). Those factors continue to counsel for detention.

None of the noted factors has changed in the time since this Court ordered Tabares detained: she has no basis to re-litigate bail on the facts of her own case and circumstances, and the current public-health issues do not alter the analysis. To be sure, the Bail Reform Act instructs the Court to consider a defendant's own "physical and mental health," 18 U.S.C. § 3142(g)(3)(A), but the general existence of a pandemic does not have significant bearing on that assessment. Currently, there are no reported cases of COVID-19 at any facility operated by the Bureau of Prisons. And Tabares does not claim to be infected with the coronavirus such that she might cause an outbreak herself. Instead, she relies on the possibility that she will become infected by someone else at the facility. Even if this Court could weigh such a speculative risk (and properly discount it by risk of Tabares's becoming infected in the community), her concern is misplaced.

The BOP has been planning for potential coronavirus transmissions since January. On March 13, 2010, BOP announced that it was implementing the Coronavirus Phase Two Action Plan in order to minimize the risk of COVID-19 transmission into and inside its facilities.[2] The Action Plan comprises several preventive and mitigation measures, including the following:

<u>Screening of Inmates and Staff</u>:  All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

---

[2] *See* Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited March 18, 2020 at 11:00 a.m. PST).

Quarantine Logistics:  The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol. Here in San Diego, the MCC has implemented protocols to quarantine any inmate with flu-like symptoms since late January, 2020.

Suspension of Social Visits and Tours:  BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the next 30 days.

Suspension of Legal Visits:  BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screen protocols for prison staff. In San Diego, the MCC has suspended all in-person legal visits until at least April 13, 2020.

Suspension of Inmate Movements:  BOP has also ceased the movement of inmates and detainees among its facilities for at least the next 30 days. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations.

Modified Operations:  Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission.  Tabares's speculative concerns should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether she is properly subject to pretrial detention. See *United States v. Adam Martin*, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (rejecting similar argument, and noting that "as concerning as the

COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act.").

### C. Conclusion

Tabares has improperly asked this Court to reassess factors pertaining to her case that the Court has already seen, and to evaluate her bail request in light of a speculative risk that BOP has taken significant steps to counteract. The Government respectfully requests that her motion be denied.

DATED: March 19, 2020

Respectfully Submitted,

ROBERT S. BREWER, Jr.
United States Attorney

/s/ *Owen Roth*
OWEN ROTH
Assistant United States Attorney